# IN THE

# TUCSON, ARIZONA



# DISTRICT COURT

## MOTION FOR RELIEF UNDER
## 28 U.S.C.S. 2241  HABEAS  CORPUS
## BASED UPON ACTUAL AND FACTUAL
## INNOCENCE

EFRAIN J. ROSA,

        Petitioner,

**CV 18 - 0438 TUCCKJDTF**

      v.         Case #:_____

JUAN BALTAZAR,

        WARDEN, U.S.P.  Tucson

        Respondent.

## PRO SE  AND  INDIGENT STATUS

Petitioner brings the following motion for relief as a Pro Se Indigent defendant. I am an incarcerated individual being held at the United States Penitentiary, Tucson, Arizona, serving an unconstitutionally imposed sentence of 120-years,.

I have been incarcerated since September 27th, 2007 and have not been employed since. I have no funds to pay filing fees, no income, no property and no motor vehicle.

I  move for indigent status in the filing of this motion and request the appointment of counsel if proceedings go any further.

On August 25, 2018

Respectfully Submitted in the stead of Efrain J. Rosa by scrivener

EFRAIN ROSA, 7869 Hawthorne Drive, Liverpool, NY 13090

All correspondence should be directed to

**Efrain J. Rosa, Reg. No. 14606-052**

**U.S.P. Tucson**

**P.O. Box 24550**

**Tucson, AZ  85734**

This has been placed in the mail on August _____, 2018, as Priority First Class Mail.

# TABLE OF CONTENTS

|  | **Page** |
|---|---|
| **JURISDICTION** | VI |
| **FACTS** | 1 |
| **ARGUMENTS RAISED** | |
| I. Petitioner is Factually, and Actually, Not Guilty of the Crimes Alleged and Convicted of. | 6 |
| II. Petitioner was Subjected to an Unconstitutional and Unreasonable Search and Seizure Sans Exigent Circumstances. | 7 |
| III. Petitioners' Court Assigned Counsel Operated Under an Undisclosed, Self-Inflicted, Actual Conflicts of Interest. | 13 |
| IV. Petitioner was Denied an Unbiased and Impartial Finder of Fact. | 15 |
| V. Petitioners' conviction is Devoid of Evidentiary Support in Violation of Due Process. | 16 |
| VI. Petitioner was Denied Due Process by Prosecutions Bad Faith Failure to Disclose Evidence Favorable to his Defense. | 26 |
| **CONCLUSION** | 28 |
| **RELIEF REQUESTED** | 29 |
| **STATUTES CITED:** | |
| 28 U.S.C.S  2241………………….. | VI |
| 28 U.S.C.S. 2255 (h) (1)…………………………. | VII |
| New York State C.P.L. Section 690.55 …………………… | 20, 21 |
| United States Constitution, Fourth Amendment | VIII, 7 |
| United States Constitution, Sixth Amendment…………….. | IX, 14 |
| Due Process | X |

| | | **Page** |
|---|---|---|
| **CASES CITED:** | | |

| # | Case | Page |
|---|---|---|
| 2 | Amore v. Novarro, 624 F.3d 522 (2d. Cir. 2010) | 18 |
| 3 | Arizona v. Gant, 129 S. Ct. 1710 (2007) | 20 |
| 4 | Armienti v. United States, 234 F .3d 820 (2d Cir. 2000) | 14 |
| 5 | Boyde v. California, 494 U.S. 370 (1990) | 27 |
| 6 | Brady v. Maryland, 373 U.S. 83 (1963) | 26, 27 |
| 7 | Brady v. United States, 397 U.S. 742 (1970) | 28 |
| 8 | California v. Acevedo, 500 U.S. 565 (1991) | 19 |
| 9 | California v. Trombetta, 467 U.S. 479 (1984) | 27 |
| 10 | Curshen v. United States, 596 F. Appx. 14 (2d Cir. 2015) | 15 |
| 11 | Cuyler v. Sullivan, 446 U.S. 335 (1980) | 14 |
| 12 | Eisemann v. Herbert, 401 F. 3d 102 (2d Cir. 2005) | 15 |
| 13 | Engle v. Isaac, 456 U.S. 107 (1982) | 6 |
| 14 | Giglio v. United States, 405 U.S. 105 (1972) | 27 |
| 15 | Glasser v. United States, 315 U.S. 60 (1942) | 14 |
| 16 | Grant v. ASPCA, 2017 U.S. Dist. LEXIS 50437, 16 Civ. 2765 (ER) | |
| 17 | (S.D.N.Y. March 31, 2017) | 21 |
| 18 | Groh v. Ramirez, 540 U.S. 551 (2004) | 10, 18, 19 |
| 19 | Harlow v. Fitzgerald, 447 U.S. 800 (1982) | 19 |
| 20 | Herring v. United States, 555 U.S. 135 (2009) | 20 |
| 21 | House v. Bell, 547 U.S. 518 (2006) | 5 |
| 22 | In reWinship, 397 U.S. 358 (1970) | X, 5 |
| 23 | Katz v. United States, 389 U.S. 347 (1967) | 7 |
| 24 | Litkey v. United States, 510 U.S. 540 (1984) | 16 |
| 25 | Massachusetts v. Sheppard, 468 U.S. 981 (1984) | 10 |
| 26 | McDonald v. United States, 335 U.S. 451 (1948) | 7, 11 |
| 27 | Miller v. Angliker, 848 F.2d 1312 (2d Cir. (1988) | 28 |
| 28 | Moss v. Spitzer, 19 A.D. 3d 599, 798 N.Y.S. 2d 482 (2d Dep't 2005) | 21 |
| 29 | People v. Sanchez, 53 Misc. 2d 672, 279 N.Y.S. 2d 836 (Crim. Ct. | |
| 30 | County of N.Y. 1967) | 19 |

II

| | **Page** |
|---|---|
| Preston v. United States, 376 U.S. 364 (1964) | 18 |
| Republican Party of Minn. v. White, 536 U.S. 765 (2002) | 16 |
| Salahuddin v. Coughlin, 781 F.2d 24 (2d Cir. 1986) | 19 |
| Skinner v. Railway Labor Exec. Assn., 489 U.S. 602 (1980) | 20 |
| Tate v. Wood, 963 F.2d 20 (2d Cir. 1992) | 28 |
| United States v. Avellino, 136 F.3d 249 (2d Cir.1998) | 27 |
| United States v. Bagley, 473 U.S. 667 (1985) | 27 |
| United States v. Berry, 113 F.3d 121 (8th Cir. 1997) | 10 |
| United States v. Blau, 159 F.3d 68 (2d Cir. 1998) | 14 |
| United States v. Benitez, 779 F.2d 135 (2d Cir. 1985) | 21 |
| United States v. Brewer, 620 F.2d 795 (10th Cir. 1980) | 27 |
| United States v. George. 975 F.2d 72 (2d Cir. 1992) | 19, 20 |
| United States v. Grant, 967 F.2d 81 (2d Cir. 1992) | 27 |
| United States v. Howard-Arias, 679 F.2d 363 (4th Cir. (1982) | 27 |
| United States v. Leon, 468 U.S. 897 (1984) | 20 |
| United States v. Levy, 25 F.3d 146 (2d Cir. 1994) | 15 |
| United States v. Malpiedi, 68 F.3d 465 (2d Cir. (1995) | 14, 15 |
| United States v. Marti, 421 F.2d 1263 (2d Cir. 1970) | 19 |
| United States v. Persico, 164 F.3d 796 (2d Cir. 1999) | 28 |
| United States v. Pforzheimer, 826 F.2d 200 (2d Cir. 1987) | 18 |
| United States v. Rogers, 209 F.3d 139 (2s Cir. 2000) | 14 |
| United States v. Rosa, 626 F.3d 56, Docket 07-0636, (2d Cir. 2010) | 11, Att: 88-93 |
| United States v. Williams, 372 F.3d 96 (2d Cir. 2004) | 15 |
| Wearry v. Cain, 136 S. Ct. 1002 (2016) | 26 |
| Weaver v. Massachusetts, 137 S, Ct. 1899 (2017) | 14 |
| Wood v. Georgia, 450 U.S. 261 (1981) | 14 |

1                                                                                       **Page**

2    **AUTHORITIES CITED:**

3    Catherine Guthrie & Brittan Mitchell,  "The Swinton Six: The Impact of

4    State v. Swinton On The Authentication of Digital Images,

5    36 Stenton L. Rev. 61                                                    24

6

7    Emily Nelson, Claims of Photofakery Gets Lots of Exposure in Court, Wall St. J.,

8    Feb 7, 1997......                                                        24

9

10   George Paul, Fabrication of Evidence: A Click Away,

11   Net. L.J.,  Feb. 21, 2000                                                24

12

13   George L. Paul, The "Authenticity Crisis" In Real Evidence, Prac. Litigator, Nov.

14   2006)                                                                    24

15

16   Seth L. Goldstein, "The Sexual Exploitation of Children" *"The Sexual*

17   *Exploitation of Children: A Practical Guide to Assessment, Investigation,*

18   *and Intervention, Practical Aspects of Criminal & Forensic Investigation*"   22, Att. 79-86

19

20   Victor E. Bianchini & Harvey Bass, A Paradigm for the Authentication of

21   Photographic Evidence in the Digital Age, 20 T. Jefferson

22   L. Rev. 3030 (1998)                                                      24

23

24   Zachariah B. Parry, Defrauding the Court One Thousand Words at a Time,

25   175 Journal of Law, Technology & Policy 2002, Vol. 2009                   24

26

27

28

29

30                                                                    Pages

# **ATTACHMENTS**

| | | |
|---|---|---|
| 1 | | |
| 2 | Post-dated Accusatory Instruments | Att. 1 - 6 |
| 3 | Federal Post Search Affidavit of Inv. Blake | Att. 7 - 8 |
| 4 | Search Warrants | Att. 9 |
| 5 | Search Warrant Application | Att. 10 - 11 |
| 6 | Search Warrant Affidavit | Att. 12 - 15 |
| 7 | Complainants Statements | Att. 16 - 18 |
| 8 | Warrantless Forensic Report | Att. 19 – 21 |
| 9 | Hand-Written Inventory of Seized Evidence Under Warrant | Att. 22 – 24 |
| 10 | Typed "true and detailed inventory of all property taken" | Att. 25 - 26 |
| 11 | New York State Police Rape Examination Report | Att. 27 – 29 |
| 12 | Medical Sexual Abuse Examination of W.S. | Att. 30 – 35 |
| 13 | Medical Sexual Abuse Examination of B.D. | Att. 36 - 41 |
| 14 | Medical Sexual Abuse Examination of M.B. | Att. 42 – 44 |
| 15 | Notarized Statement of Richard Russell | Att. 45 |
| 16 | Notarized Statement of Karen M. French | Att. 46 |
| 17 | Affidavit of inmate | Att.47 – 48 |
| 18 | Crimes Management System Evidence/Property Report | Att. 49 – 63 |
| 19 | Letter verifying lack of any "Turnover order" | Att. 64 |
| 20 | Criminal Court Transcript, Oswego Count, New York | Att. 65 – 73 |
| 21 | FOIL Request to Sheriff of Oswego, County, New York | Att. 74 |
| 22 | Sheriff of Oswego, County, New York reply to FOIL | Att. 75 |
| 23 | FOIL response by Oswego County Court Judge | Att. 76 |
| 24 | FOIL request to U.S. Attorney's Office, Syracuse, N.Y. | Att. 77 |
| 25 | FOIL request to the F.B.I. Office, Syracuse, N.Y. | Att. 78 |
| 26 | Pages from Seth L. Goldstein's book | Att. 79 – 86 |
| 27 | Photocopy of envelope | Att. 87 |
| 28 | Portion of U.S. v. Rosa, Doc. 09-0636, Second Circuit brief | |
| 29 | Filed by Assist. U.S. Attorney | Att. 88 – 93 |
| 30 | Photo of handgun parts | Att. 94 |
| 31 | | |

## JURISDICTION

Pursuant to **28 U.S.C.S. 2241**, a person in custody under or by color of the authority of the United States, or in Custody, in violation of the Constitution or laws or treaties of the United States, may petition the Supreme Court, any justice thereof, the district court and any circuit judge within their respective jurisdiction for a writ of Habeas Corpus.

**28 U.S.C. §2241** Power to grant writ

a. Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is held.

c. The write of habeas corpus shall not extend to a prisoner unless...

    1. He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

    3. He is in custody in violation of the Constitution or laws or treaties of the United States.; or

Petitioner is currently incarcerated at the <u>United States Penitentiary, Tucson, Arizona</u> in violation of the Constitution of The United States under the authority of the United States.

## DECLARATION

All facts presented in this motion are true, accurate and reliable, based on and from documentation by and from the Government and/or Courts with added support of legal journals and law enforcement text book.

## FACTS:

Sometime prior to Thursday, September 26th, 2007 Deputy J. Burke of the Oswego County Sheriff's office, Oswego, New York, drafted, post dating for Friday, September 27th, 2007, and swore to six (6) Accusatory Instruments (**Att, 1-6**) alleging criminal sexual abuse of children. At 5:58 P.M. on Thursday, September 26th, 2007, an unknown person faxed these documents from the Volney, N.Y. Justice Court. This is <u>evident by the fax date/time stamped on the header on each page.</u>

Approximately five hours **after** the faxing of the Accusatory Instruments, a phone call was made to 911, alleging sexual abuse of children. This call then prompted Dep. Burke to arrive at complainants home to take statements in support of his <u>pre-written Accusatory Instruments</u>, previously sworn to, not finishing the statements from complainants until well after 12:40 A.M. on Friday, September 27, 2007. (<u>Att. 16-18</u>)

In a document provided by the prosecution (<u>Att. 7</u>), Investigator Bryan J. Blake (hereinafter Blake) was contacted *"[d]uring the early morning hours of September 27, 2007, I was called at home regarding an active investigation involving the sexual abuse of children.... As a result of the information gathered in the investigation, I drafted a Search Warrant...(<u>Att. 7</u>) to search for and seize any computers, computer equipment, firearms and "notes and records which would tend to identify criminal conduct..."* sans any judicially imposed limitations.(<u>Att. 9</u>) At 4:10 A.M. that morning Blake and Investigator Anderson, also of the Oswego County Sheriff's office, met with the Town of Hannibal, N.Y., Justice Bruce Wells at his home to have Judge Wells sign an all-encompassing Constitutional deficient warrant. At no time prior to, or driving to Judge Wells home, did Inv. Anderson or Blake review the warrant to ensure the document was

1

error free. It is unknown if Judge Wells was aware that he was authorizing an all-encompassing, limitless, unconstitutional warrant or fishing expedition. Neither Blake nor Inv. Anderson notified Judge Wells that the warrant contained no limitations on the type of criminal conduct being sought. Further, it is unknown if Judge Wells inquired or received any indication that the warrant was constitutionally valid. This is evident based on Blake's testimony at the Oswego County Court. (Att. 70-72)

At the time, Blake had been "...*employed by the Oswego County Sheriffs Office as a Criminal Investigator and have been so employed since June 13, 1994, and was employed prior to as a sworn Police Officer for the Oswego City Police Department starting on August 8, 1990 and ending June 13ᵗʰ, 1994.*" (Att. 12) Clearly, without any ambiguity, Blake is a highly trained Officer of the Law and Investigator, with over two (2) decades of experience and training in law enforcement. Further, pursuant to his affidavits (Att. 7 –8 and 12 – 15) he had "...*been using computers since approximately 1986... self-taught to repair and build computer systems, trouble shoot hardware and software problems,...tested software and hardware for various companies including Microsoft, Windows Operating Systems, Iomega Zip, Norton Utilities, Sheridan and several other companies.*" In addition to "...*attend[ing] and successfully complet[ing] numerous training classes on computers and forensic analysis of computers.*" Blake personally drafted and led the execution of the search warrant, [and] "*pursuant to standard procedure was responsible for identifying and collecting the evidence and items to be seized within the scope of the warrant.*" (Underline not in original)

A reasonable person may presume that after executing the warrant Blake would have taken all the evidence, thus collected, to the Sheriffs' Office for securing in the evidence locker. However, as newly discovered, Blake did not immediately secure all the evidence and items in the evidence locker. The newly discovered evidence unambiguously shows that Blake failed to secure many of the items seized on September 27ᵗʰ, 2007 until days, months, later. (Att. 55 – 60) Blake confirms in his post-search forensic examination sans anything that could possibly be considered extenuating circumstances, since Petitioner was in a locked interview room and later held in the

County Jail, that he began an <u>83-day forensic search</u> through the items seized <u>(Att. 19)</u> for evidence of **ANY** crime, sans limitations, lacking an authorized Search Warrant to do so.

In his <u>83-day</u> Forensic Report, Blake claims, "*The first computer to be examined was the Compaq EVO Laptop*", wherein he claims to have allegedly "...*recover[ed] approximately 39 photographs that would be considered Child Pornography.*" <u>(Att. 20)</u> which is the basis for the conviction. However, no where on the hand-written <u>(Att. 19 –21)</u> , "...*true and detailed inventory of all property taken by [Blake] on the warrant...*", <u>(Att.25-26)</u> or **the newly discovered Chain of Custody documents** is there any Child Pornography listed. Further, <u>nor is the original Compaq EVO Laptop Serial #p106x420bc12xol seized on September 27th, 2007, shown as being secured in the evidence locker.</u>

When Petitioner was arrested, a rape-examination was done on the sons of complainants <u>(Att. 27-29)</u> and sent to the <u>New York State Police Forensic Investigation Center</u> on 10-18-07. The results of said examination were **NEGATIVE**, a lack of confirmation of allegation in that "*Physical exam neither confirms nor denies a history of sexual abuse.*" <u>(Att. 31, 38, 44).</u> For the prosecution, a POSITIVE result would have condemned Petitioner, but a NEGATIVE finding had no relevance in the case.

Regardless of the aforementioned facts, Petitioner, ignorant of the law and courts, was coerced by Court appointed Counsel to plead guilty to a 15-30 year sentence with a promise that it would be over-turned in the Second Circuit Court of Appeals, since, **according to Court appointed Counsel**, District Judge Mordue would not judge the case fairly nor be inclined to hear the facts in the case. Counsel was correct on both counts.

On or about June 2013, Petitioner learned, for the first time, that District Court Judge Mordue, who presided over the case in Syracuse, New York, was in fact not impartial or an unbiased finder of fact. The Assistant U.S. Attorney on the case was heard openly and freely boasting to an investigator that; "*Not to worry...I'm sure you know we have judges in our pocket and not to worry because <u>Judge Mordue is in mine</u>*". <u>(Att. 45,</u>

46) (underline not in original) The witnesses who overheard this exchange provided Petitioner with signed and notarized statements attesting to what they heard.

On January 6, 2016 Petitioner was informed that his court assigned Counsel, Lisa Peebles, had abandoned Petitioner in favor of assisting Prosecution in a quid-pro-quo arrangement for another client. The informant provided a sworn statement (Att. 47 - 48) with details known only to the prosecution and defense Counsel. This statement is sworn to under penalty of perjury, unequivocally proving that Petitioner was made a sacrificial goat on the courtroom alter for Sixth Amendment purposes.

On **September 2017**, Petitioner received, anonymously, through the prison mail, newly discovered evidence, the Oswego County Sheriff's "**Crime Management System Evidence/Property Report**" (Att. 49-63). Chain of Custody Documentation. The material came in a plain vanilla envelope with Petitioner's Name, Unit and Registration Number. There was no return address or other documentation to show WHO sent it. (Att. 87) Mail Receiving at U.S.P. Tucson was unable to provide details on who sent it. Upon a perusal of the documentation, Petitioner immediately noticed that the claimed "*storage drive and contact or thumbnail sheet*" that was produced by Blake of the alleged "*approx 39 photographs that wound be considered Child Pornography...*" the alleged "*DVD labled videos*" (Att. 20) and the Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol Seized on September 27th, 2007 (Att. 22, 25) had never been entered into the evidence locker or secured in any way. (Att. 49-63) This ignores the fact that Blake was ordered by Judge Wells "*...to secure and maintain all above listed items in accordance with the [Oswego Sheriffs] standard operating procedure and pursuant to C.P.L. Section 690.55*" (Att. 26), an order written by Blake and signed by Judge B. Wells. As aforementioned, none of the alleged Child Pornography photos, the storage drive or DVD mentioned in Blake's forensic report, were listed as being seized or secured in the evidence locker.

In light of the newly discovered evidence that the computer that allegedly contained evidence of Child Pornography and Production of same is not the same computer seized under the Search Warrant. This is prima facie evidence that Blake replaced Petitioners Compaq EVO Laptop Serial #p106x420bc12xol with another in the six days prior to logging it into the evidence locker. Based on aforementioned, no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. **(House v. Bell, 547 U.S. 518, 536-37 (2006)** *"In an effort to balance the societal interest in finality, comity, and conservation of scarce judicial resources with the individual in justice that arises in the extraordinary case, the Court has recognized a miscarriage-of-justice exception. In appropriate cases, the Court has said, the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration. [T]he Court [has] adopted a specific rule to implement this general principle. It held that prisoners asserting innocence as a gateway to defaulted claims must establish that in light of new evidence, it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt."* **(Internal citations omitted)**

This claim of actual innocence is credible and supported by newly discovered and reliable evidence:

1. Withholding of exculpatory scientific evidence
2. Trustworthy eye-witness accounts
3. Critical physical evidence withheld by prosecution in bad faith

The presented facts require, cry for, the conviction to be overturned and expunged in every way, as a fundamental miscarriage of justice has occurred. Concern about the injustice which results from the conviction of an innocent person has been at the core of the criminal justice system. This concern is reflected in the *"...fundamental value determination of our society that it is far worse to convict an innocent man then to let a guilty man go free.".* **In re Winship, 397 U.S. 358, 372 (1970)**

As the Court in **Engle v. Isaac** found, in "appropriate cases", the principles of comity and finality that underlie Federal Habeas Corpus review *"must yield to the imperative of correcting a fundamentally unjust incarceration."* **456 U.S. 107, 135 (1982)**

## ARGUMENTS:

The officers of the Oswego County Sheriff's Office, Special Agents of the F.B.I., Assistant U.S. Attorney Lisa Fletcher, Federal Public Defender Lisa Peebles and N.D.N.Y. Judge Norman A. Mordue operated in collusion to illegally deprive Petitioner of his Constitutional Guarantee of Due Process, Six Amendment guarantee of Counsel and Fourth Amendment Protections in order to convict Petitioner to a life sentence of 120-years on a subjective **perception of guilt,** sans evidence of same. To insure conviction, evidence was withheld.

## I. PETITIONER IS FACTUALLY AND ACTUALLY NOT GUILTY OF THE CRIMES ALLEGED AND CONVICTED OF.

Prior to September 26th, 2007, 5:58 P.M., hours if not days before complaints or call to 911 were made, Deputy J. Burke , of the Oswego County Sheriff's Department (hereinafter Burke)  drafted and post-dated six (6) accusatory instruments alleging criminal sexual abuse of children. Burke then swore to these documents "under penalty of perjury". (Att. 1-6).

An  unknown person, or persons, faxed these documents from the Volney Justice Court on Thursday, September 26th, 2007 at 17:58 hours, clearly evident based on the fax date/time stamp at the top of each page. This casts a cloud on the questionable actions of Burke being that Petitioner appeared to be an ignorant Hispanic living in a low-income neighborhood.

Based on documentation presented by Burke, it is evident that Burke did not start interviewing the complainant's until, at least, 23:30 September 26th, 2007, hours after faxing the already prepared accusatory instruments. Not finishing the complainant's statements (Att. 16-18) until sometime after 00:40 on Friday, September 27th, 2007. As the U.S. Supreme Court recognized many years ago, "*Power is a heady thing, and history shows that the police acting on their own cannot be trusted.*" **McDonald v. United States, 335 U.S. 451, 456 (1948).**

## II  **PETITITONER WAS SUBJECTED TO AN UNCONSTITUTIONAL AND UNREASONABLE SEARCH AND SEIZURE SANS EXTENUATING CIRCUMSTANCES**.

In order to support the allegations by Burke, Blake, a two (2) decade veteran with law enforcement, was enlisted to draft an all-encompassing, Search Warrant using a fine seine net for any computers, computer equipment, firearms and "*...notes or records which would tend to identify criminal conduct*" **(Att. 9)** with absolutely no judicial limitations. (Underline not in original)

"*Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police*" **McDonald, 335 U.S. at 455.** (see Att. 72-73). It is evident there were no exigent circumstances. A magistrate was clearly lacking in this case. Even though the Second Circuit and the Government put forth the subjective conjecture that the police acted with restraint under extenuating circumstances, "*...the inescapable fact is that this restraint was imposed by the [police] themselves, not by a judicial office*r" **Katz v. United States, 389 U.S. 447, 456 (1967)**, and Blake's testimony shows that he acquired the "any time" authorization on the warrant (Att. 9) "*...because it was 4:00 in the morning and we were going to execute the warrant fairly soon which would have been prior to 6:00 that morning.*" Att. 72., **no extenuating circumstances**!

The unconstitutional search did not stop on September 27th, 2007; the date the warrant was executed. It did not stop after the police abandoned the unsecured residence.

It did not stop after they had most of the evidence at the Sheriff's office. The facts, and government documents, unequivocally prove that Blake continued his unconstitutional search for over 83-days, from September 27, 2007 through December 18, 2007 (Att.19) sans extenuating circumstances. Blake could have, at any time, gone back to Judge Wells and acquired a second warrant. Based upon Blake's typed "…*true and detailed inventory of all property taken*" (Att. 25-26), Blake went back to Judge Wells sometime in September 2007, for Judge Wells Signature on the inventory document. (Att 26)

Blake's all-encompassing fine seine fishing expedition is evident by his inventory of items searched for and seized on September 27th 2007, items Blake swore he seized "***within the scope of the warrant***" (Att. 8); (underline not in original)

1.  Handcuffs
2.  Marijuana Pipes
3.  GPS Receivers
4.  A set of automotive lockout tools
5.  Green leafy substance
6.  Fireworks
7.  Miscellaneous Pills
8.  An ashtray
9.  Digital scales
10. A homemade paper color copy drivers license
11. An E.M.O. I.D.
12. Pieces of handgun parts (Att. 94)

Reasonable persons could easily see that the items could not be related, not even tangentially, to allegations made by the complainants (Att. 16-18), or possibly contain evidence of the allegations and/or Burke's own post-dated and pre-written accusatory instruments (Att. 1-6) or Blake's Search Warrant Affidavit. (Att. 12-15). As is evident, Blake never took the time, or attempted, to acquire a warrant to seize these items.

It has been shown, the original Compaq EVO Laptop Serial #p106x420bc12xol seized from Petitioner's residence on September 27th 2007, is not the same Compaq EVO stored in the evidence locker on October 3, 2007. It is not the same Compaq EVO laptop that Blake claims to have recovered the alleged "*39 approx photographs that would be considered Child pornography*" (Att. 20). This is evident based on the Sheriff's own "*...evidence/property report*" (Att. 49-63), the original Compaq EVO Laptop Serial #p106x420bc12xol had been replaced by members of the Sheriff's Department on, or about, October 3rd, 2007, six (6) days after seizing the original Compaq EVO Laptop Serial #p106x420bc12xol. It was on October 1, 2007 (Att. 8) that Judge Wells signed the order directing "*...Oswego County Sheriff's Department to secure and maintain all the above listed items in accordance with their standard operating procedures and pursuant to CPL Section 690.55.*" On September 27th, 2007, on a hand-written inventory (Att. 22), the Compaq EVO Laptop Serial #p106x420bc12xol was originally seized, is the first time it appears on any documentation. The next time, it appears on the typed "*...true and detailed inventory*" (Att.25-26), that Blake swore to, was written based on the hand-written inventory. (Att. 8) That was the last time the original Compaq EVO Laptop Serial #p106x420bc12xol appears on any document.

One cannot say that Property Officer, L.J. Totman failed to list the serial number of the aforementioned Compaq EVO Laptop in his evidence locker log. Perusal of the "*evidence/property report*" shows that Officer L.J. Totman did, in fact, list every serial number available. It is clear that Officer L.J. Totman is fastidious as custodian of the evidence locker.

Blake requested the "*...warrant be made executable at any time of the day or night based on the following facts; The property sought, computer data can be destroyed easily and quickly and because it is unknown at what time of the day or night said property will be secured, secreted and/or maintained at said premises in that the subject(s) as described in the attached affidavit.*" (Att. 11) Based on Blake's own court testimony, he stated the reason he requested the order to execute the warrant at any time of the day or night, was solely "*...because it was 4:00 in the morning and we were going*

*to execute the warrant fairly soon which would have been prior to 6:00 that morning.*"
(Att. 71 – 71)

      Blake's court testimony shows he intentionally misrepresented to Judge Wells to authorize the any time, day or night, search. See **United States v. Berry, 113 F.3d 121, 123 (8ᵗʰ Cir. 1997)** (If "*...there was a reckless disregard of the proper procedure for a night search by the officials involved...then the search is unconstitutional and the fruits of the search must be suppressed.*") There were never any extenuating circumstances to justify the <u>any time authorization</u>, the warrantless 83-day forensic examination or the rushed execution of the Search Warrant. Blake never stopped to ensure if the warrant he had drafted was Constitutionally valid, required by binding U.S. Supreme Court case law, see **Groh v. Ramirez, 540 U.S. 551 (2004)**, "*It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted.*" **Id at 563**, "*This is not a duty to proofread; it is, rather a duty to ensure that the warrant conforms to constitutional requirements.*", **id at n6**, see also Justice Kennedy's dissent in **Groh**, with Chief Justice Rehnquist joining, "*The majority is surely right that a reasonable officer must know that a defective warrant is invalid.*", **id. at 569**, "*The Courts new 'duty to ensure that the warrant conforms to constitutional requirements' sounds laudable, **ante, at 563, n.6** ...*", **id. at 571**

      Unlike **Massachusetts v. Sheppard, 468 U.S. 981 (1984)**, where the officer requested the issuing judge to conform their warrant to constitutional requirements, and the judge assured the officer requesting the warrant that he would, **id. at 968**. In contrast, Blake did not request that Judge Wells conform the warrant to meet constitutional requirements, nor did Blake receive any assurance to this requirement. See (Att. 70-73) Based on the affidavit per se, it is unknown if Judge Wells was ever shown the affidavit, for while Blake swore that "*Judge Wells...signed the...affidavit in support thereof...*" (Att. 8) , a perusal of the affidavit shows that Judge Wells never signed the affidavit. Further, pursuant to Blake's testimony, he was never placed under oath for the affidavit, a Constitutional requirement. See (Att. 70-72)

Q. *When (Judge Wells) finished did he ask you any questions?*

*A. No, he didn't ask anything at all…"*

It is obvious, to reasonable people, that Blake faced no danger to himself, his officers or any alleged evidence being destroyed or tampered with other than by Blake himself. Blake, who drafted the warrant, who was *"…responsible for identifying and collecting evidence…within the scope of the warrant"* (Att. 8) , was the sole forensic examiner of seized property. (Att. 88-89) As the U.S. Supreme Court reminds, "…*history shows that police acting on their own cannot be trusted."* **McDonald, 335 U.S. at 456.**

Assistant U.S. Attorney Lisa Fletcher, in her filed brief in the **United States Second Court of Appeals, Docket 09-0636** (Att. 91), unequivocally acknowledged that "*Blake was both the forensic examiner and affiant, he did not stop his search to inquire if the warrant he had written was sufficiently particular…*" (Att. 91) Blake had no supervision while conducting his warrantless forensic examination at the Sheriff's Department, away from any chance of the Petitioner tampering with or destroying any possible evidence, of which there was none.

Assistant U.S. Attorney Lisa Fletcher declared, in her brief, that *"…the application regarding the electronic media limited search to evidence of sex offences and child pornography"* (Att. 91), this is blatantly incorrect! The Application for the Warrant left open what criminal activity was being sought. See (Att. 10) ("*The property sought to be seized and searched is described as…electronic stored notes and records which would tend to identify criminal conduct…"*). (underline not in original) There is no mention of sex offences or child pornography, as Assistant U.S. Attorney Lisa Fletcher led the Court to believe. Even the Affidavit for the Search Warrant (Att. 14) was overly broad about what was being sought; *"All of the materials requested for seizure will demonstrate the person under investigation has committed felonies."* Unlike the book plagiarized by Blake, Blake did not identify any legal statutes, i.e. "to wit: Penal Code Sections 288 (a) and 311.3" (Att. 86)

11

Assistant U.S. Attorney Lisa Fletcher's assertion that "*The search methodology was limited to finding child pornography*" (Att.91) is a fabrication intended to mislead the Court. This is evident by Blake's own forensic report (Att. 21), there is no search methodology identified, described, documented or hinted at in Blake's report. The report only states that; "*A preview was conducted which immediately resulted in the recovery of approx 39 photographs that would be considered Child Pornography.*" (Att. 20)  No indication as to what was being sought – as demonstrated by what was inventoried. While Assistant U.S. Attorney Lisa Fletcher also asserts that ; "*Inv. Blake 'seized only evidence related to the crimes identified in the Affidavit'* " (Att. 91), again she misrepresents to the Court, a perusal of the hand-written inventory (Att. 22-24) and the typed "*...true and detailed inventory of all property taken*" (Att. 25-26) clearly show Blake seized many items unrelated to evidence of sex offences and child pornography

     a.  Handcuffs

     b.  Cassette recorder

     c.  Marijuana Pipes

     d.  Green leafy substance

     e.  Ash tray

     f.  Fireworks

     g.  Misc. pills

     h.  GPS Receivers

     i.  A set of automotive lockout tools

     j.  Ammo box with more green leafy substance

     k.  Digital scales

No reasonable person could possibly dovetail these items with Child Pornography as asserted by Assistant U.S. Attorney Lisa Fletcher. It is incomprehensible how the Court could believe such blatantly false assertions.

Assistant U.S. Attorney Lisa Fletcher asserted that Blake operated under "*exigent circumstances*" (Att. 91) when Blake drafted the Warrant, Application and Affidavit. It is clear, as the record shows, that Blake faced no "**exigent circumstances**", he merely

wanted to execute the warrant as it was already 4:00 A.M. (Att. 70-73), and for no other reason.

Taken as a totality, the **newly discovered evidence** shows Blake misrepresented the facts to get an any-time authorization in the warrant. Blake did not limit his search to evidence of the crime, as asserted by Assistant U.S. Attorney Lisa Fletcher. Blake did not secure the items seized after the search or when ordered to by Judge Wells. It also appears that Blake replaced the Compaq EVO Laptop computer with another that may, or may not, have contained what could be considered Child Pornography placed therein by person or persons unknown. It is more likely, than not, that no reasonable finder of fact could have found Petitioner guilty of the offenses.

**Based on the evidence**, Petitioner was clearly subjected to an unconstitutional and unreasonable search and seizure sans exigent circumstances. Blake misrepresented to Judge Wells in order to get an any-time authorization, enabling him and his associates to begin executing the Search Warrant on September 27th, 2007 at 5:05 A.M. (Att. 73)

## III. <u>PETTITIONER'S, COURT ASSIGNED, COUNSEL OPERATED UNDER AN ACTUAL, SELF-INFLICTED, CONFLICT OF INTEREST</u>

On **October 5th, 2007**, Petitioner was assigned counsel, Melissa A. Touhey, from the Syracuse, New York, Federal Public Defender's Office. On January 7th, 2008, due to a disagreement she was replaced with Ms. Lisa Peebles. However, unbeknownst to Petitioner, Ms. Peebles was not representing Petitioner, in the full meaning of the word, during the proceedings.

On January 6, 2015, Petitioner learned, **for the first time**, that during the proceedings, <u>Ms. Peebles had abandoned Petitioner in favor of working with Assistant U.S. Attorney Fletcher</u> on the case to help convict Petitioner. In an unsolicited, sworn statement, provided by another inmate from the county jail where both were being held.

A former client of Ms. Peebles disclosed that Ms. Peebles, while claiming to represent Petitioner, had solicited said inmate to acquire a confession from Petitioner in a quid-pro-quo deal for a lesser sentence. (Att. 47-48)  While this is standard procedure for the prosecutor's office to do, it is not in the best interest of the defendant in a criminal case for his Counsel to do so.  The Defendant must rely on Counsel for legal advice for his defense; Ms. Peebles clearly demonstrated a Self- Inflicted **CONFLICT OF INTEREST** and infringed Petitioners legal rights.

Due to the split loyalties, by Ms. Peebles, Petitioner suffered a lapse in representation, which adversely prejudiced Petitioner. Counsel's inability to make a conflict free decision is itself a lapse in representation. **United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995)** *"Every defendant is entitled to 'representation that is free from conflict of interest'."* (Quoting **Wood v. Georgia, 450 U.S. 261, 271 (1981)**)). Ms. Peebles conflict of interest, soliciting her other client to get Petitioner to confess to a crime for the prosecution clearly adversely affected *"...the fundamental fairness of the proceeding[s]"*. **Weaver v. Massachusetts, 137 S. Ct. 1899, 1911 (2017).**  As a result, Ms. Peebles **abandoned all defense strategies** and tactics, opting to pursue a plea agreement instead. This entire motion is replete with plausible alternative defense strategies, i.e.

      I.      Challenging authenticity of images

      II.     Challenging source of images

      III.    Challenging chain of custody

      IV.    Challenging the whereabouts of Petitioners Compaq EVO Laptop Serial #p106x420bc12xol

      V.     Where was Compaq EVO Laptop Serial #p106x420bc12xol in the six days prior to securing another in the evidence locker (Att. 55)

      VI.    What happened to the floppy discs and DVD's listed as being taken?

*"A defendants Sixth Amendment right to Counsel includes a right to conflict free representation."* **Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000)** (quoting

14

**United States v. Rogers, 209 F.3d 139, 143 (2d Cir. 2000)**)); and **United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998)** Ms. Peebles "…*struggle to serve two masters could not seriously be doubted*." **Cuyler v. Sullivan, 446 U.S. 335, 349 (1980)** (citing) **Glasser v. United States, 315 U.S. 60, 75 (1942)** "A *defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief*." **Cuyler, 446 U.S. at 349-50.** This self-inflicted conflict of interest that Ms. Peebles was operating under seriously affected her representation of Petitioner while assisting the prosecution in order to convict her client, Petitioner. "*[I]t is enough to show that a conflict existed that was inherently in conflict with a plausible line of defense or attack on the prosecution's case*." **Malpiedi, 62 F.3d at 469**

"*A defendant can prove a lapse in representation by demonstrating 'that some plausible alternative defense strategy or tactic might have been pursued, and the alternative defense was inherently in conflict with or not undertaken due the attorney's other loyalties or interests'*. "**United States v. Williams, 372 F.3d 96, 106 (2d Cir. 2004)** (quoting **United States v. Levy, 25 F.3d 96, 106 (2d Cir. 1994)** It is clear that Ms. Peebles failed to pursue an adequate defense strategy or tactic as she was working with prosecution against Petitioner, her client. In making this showing, the Second Circuit has cautioned that a plausible alternative strategy does not mean a reasonable one. **Eisemann v. Herbert, 401 F.3d 102, 107 (2d Cir. 2005)**; see also **Curshen v. United States. 596 Fed. Approx 14, 16 (2d Cir. 2015)** ("*But as we have made clear, an alternative defense strategy is plausible even if unreasonable.*")

Ms. Peebles deserted her client, Petitioner, abandoning defense strategies and tactics, some herein argued by Petitioner, to assist the prosecution in obtaining a conviction under false pretension. Ms. Peebles operated under a self-inflicted conflict of interest; see (Att. 47-48), denying Petitioner's Sixth Amendment Constitutional right to counsel.

## IV.   PETITIONER WAS DENIED AN UNBIASED AND IMPARTIAL FINDER OF FACT.

In addition to having Petitioner's court assigned counsel, Ms. Peebles, working with and for Assistant U.S. Attorney Fletcher in this case to help convict Petitioner, Petitioners arguments, underline{arguments Petitioner made}, not Counsel, were being heard by a Finder of Fact that was not functioning as such, but rather as an arm of the prosecution along with Petitioners Counsel. In June of 2013, two, unattached and unrelated disinterested witnesses with nothing to gain, provided Petitioner with unsolicited, signed and notarized statements. The witnesses overheard Assistant U.S. Attorney Fletcher freely boasting how she has Federal Circuit Judge Norman A. Mordue in her pocket; "*I'm sure you know we have Judges our pocket and not to worry because Mordue is in mine.*" (Att. 45,46) The inference is clearly unethical and criminal, demanding the conviction be overturned as well as inquiry into all cases ruled on by Judge Norman A. Mordue prosecuted by Assistant U.S. Attorney Fletcher. The U.S. Supreme Court has found that, "...*an impartial judge is essential to due process.*" **Republican Party of Minn. v White, 536 U.S. 765, 776 (2002).** Further, "*[I]f a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified.*" **Litkey v. United States, 510 U.S. 540, 564 (1994)**

In light of the aforementioned, along with the test provided above, a reasonable person may conclude, with a degree of certainty, that Judge N.A. Mordue was not unbiased or an impartial finder of fact. It would be apparent, to all reasonable people, that indigent defendants are at a distinct disadvantage when appearing before a judge, in the pocket of the prosecution, acting as an arm of the prosecution.

## V. **PETITIONER'S CONVICTION  IS DEVOID OF ANY EVIDENTIARY SUPPORT,  VIOLATING  DUE PROCESS.**

To reiterate, Deputy Burke, a law enforcement Officer with the Oswego County Sheriff's Office, on, or prior to, September 26, 2007 pre-drafted six (6) accusatory instruments (Att. 1-6)  alleging two (2) counts of predatory sexual assault against a child, two (2) counts of Criminal Sexual Act in the First Degree and two (2) counts of endangering the welfare of a child. These documents were written up hours, if not days,

16

before complainants utilized a 911 call to lodge a complaint. (Att. 16-18). On September 27, 2007, Investigator Blake personally drafted (Att. 7) a Search Warrant for evidence of any criminal conduct (Att. 9). Blake, along with Inv. Michael Anderson a law enforcement Officer with the Oswego County Sheriff's Office, then went to the home of Judge Bruce R. Wells, Granby Town Court, 820 County Route 8, Fulton, NY 13069, to have Judge Wells sign and authorize the Search Warrant. Blake then went back to the Oswego County *"Public Safety Center[and m]ade a copy of the Search Warrant itself…,"* before going to the "Cayuga Community College parking lot [to m]eet with other deputies." (Att. 71) It is apparent that in the drafting of the Search Warrant and supporting documents that Blake misled Judge Wells in order to obtain an any-time authorization on the warrant, see (Att. 11); *"I further request that such warrant be made executable at any time of the day or night based on the following facts: the property sought, computer data can be destroyed easily and quickly and because it is unknown at what time of day or night said property will be secured, secreted and/or maintained at said premises in that the subject(s) as described in the attached affidavit."* However, in a Court transcript Blake stated; *"any time of the day or night because it was 4:00 in the morning and we were going to execute the search warrant fairly soon which would have been prior to 6:00 that morning….The time of day was done because we were going to execute the search warrant prior to 6:00 in the morning."* (Att. 72-73) At 5:00 A.M. (Att. 73) on September 27, 2007, Blake personally executed (Att. 8) the Search Warrant lacking any judicially imposed limitations, being personally *"…responsible for identifying and collecting the evidence and items seized within the scope of the warrant."* (Att. 8), seized a Compaq EVO Laptop Serial #p106x420bc12xol (Att. 22, 25). After execution of the warrant, Blake took the evidence and items seized to the office of the Oswego County Sheriff's Office and secured the following items: "clothing, marihuana pipe, screens", ".22 cal ammo", "various fireworks", "modem, web cam, router, "vehicle lock-out tools", marihuana, digital scale, pipe, "Sony Playstation, zip drive", and ".22 cal. semi-auto pistol" (Att. 94) into the evidence locker. (Att. 50-54) On October 1, 2007, Blake was ordered to "secure and maintain" all the items listed in the retyped inventory return (Att. 25-26). Blake himself writing this order and taking it to Judge Wells for the Judge's signature (Att. 8). On October 3, 2007 Blake secured the following items, a "Compaq EVO laptop" with no

serial number, and an "E Tower 5001X" computer into the evidence locker. (Att.55-56) At this junction a reasonable person will question where this Compaq EVO laptop, ostensibly containing child pornography, with no serial number, that was secured in the evidence locker came from. Apparently Blake did not secure the Compaq EVO Laptop Serial #p106x420bc12xol, sans any child pornography, into the evidence locker, instead he replaced it with another that may have,  securing that one in the evidence locker. It is unknown what became of Petitioner's Compaq EVO Laptop Serial  #p106x420bc12xol.

Blake claimed he was conducting a forensic examination on the seized items, sans a Search Warrant authorizing him to do so, from *"the period of September 27, 2007 through December 18, 2007"*. (Att. 19-21, 88-89) A reasonable person will note that while Blake had finished his forensic examination of the seized items on December 18, 2007 (Att. 19), all the seized items were as yet not secured in the evidence locker, a "hard drive, camera equipment", "various CD's, and another "Hard Drive's" were not secured in the evidence locker until December 31, 2007 and January 4, 2008 (Att. 58-60). Again, reasonable people may ask; **what was Blake doing with these items the prosecution claimed was used in the commission of the alleged crimes?**

Further, as a well-trained officer, Blake, on September 27, 2007 was acting as a federal officer conducting a search for evidence in a federal case. As such, Blake is chargeable with the knowledge of **Groh v. Ramirez, 540 U.S. 551 (2004)**, where the Court reinforced "*…the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant."* **Id. at 589**

Blake's actions in this case must be judged as if conducted by a well-trained federal officer, knowing all federal requirements for a search and seizure and all binding case law pertaining to a search and seizure. In **Preston v. United States, 376 U.S. 364, 366 (1964),** the U.S. Supreme Court ruled that; '*The question whether evidence obtained by state officers and used in a federal [criminal proceeding] was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers.*' In "**United States v. Pforzheimer, 826 F.2d 200, 203 (2d Cir. 1987)** the Courts "*impute*

*knowledge of the case law to public officials.*" **Amore v. Navarro, 624 F.3d 522, 535 (2d Cir. 2010)** Reliance on the subjective reasonableness of an established law, as such if the law was clearly established any good faith defense should fail, since a reasonably competent public official knows the law governing his conduct. **Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982**); **Salahuddin v Coughlin, 781 F.2d 24, 27 (2d Cir. 1986)** ("*Officials are held to have a constructive knowledge of established law."*)

While Blake's application for the Search Warrant may have described the "*things to be seized*" by stating "*[t]he property being sought is described...in violation of Articles 130, 263 and 265 of the Penal Law of the State of New York*" (Att. 10) this "*...does not save [the] warrant from its facial invalidity*" **Groh, 540 U.S. at 557.** This is not new, in 1992 the Second Circuit Court of Appeals made clear that "*...mere reference to evidence of a violation of a broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize.*" **United States v. George, 975 F.2d 72, 76.** In **United States v. Marti, 421 F.2d 1263, 1268 - 1269 (2d Cir. 1970),** the Second Circuit cited **People v. Sanchez, 53 Misc. 2d 672, 279 N.Y.S. 2d 836 (Crim. Ct. County of N.Y. 1967)** for the position that a specific affidavit can only cure a general warrant when the warrant expressly refers to the affidavit for the particular description.

For "*[I]t is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted... This is not a duty to proofread, it is, rather a duty to ensure the warrant conforms to constitutional requirements.*" **Groh 540 U.S. at 563, n6,** See also the dissent in **Groh,,** that recognized as much, "*The majority is surely right that a reasonable officer must know that a defective warrant is invalid. This much is obvious, if not tautological.*" Id. At 569. As well as, "*The Court's new 'duty to ensure that the warrant conforms to constitutional requirements.*'" Id. At 571 Inv. Blake, acting as a Federal Officer collecting evidence for a federal prosecution, clearly recklessly disregarded the Supreme Court's new duty for officers. As well as the fact that "*warrantless searches are per se unreasonable.*" **California v. Acevedo, 500 U.S. at 565, 593 (1991)**

Even if it were true, though evidence fails to support Assistant U.S. Attorney Lisa Fletcher declarations in her brief (Att. 91), that Blake did confine his search methodology to searching for child pornography, sans a search warrant authorizing said search, the U.S. Supreme Court, "*... has never sustained a search upon the sole ground that officers reasonably expected to find evidence of a particular crime and voluntarily confined their activities to the least intrusive means consistent with that end.*" **Skinner v. Railway Labor Exec. Assn. 489 U.S. 602, 654 (1989)**; **United States v. Leon, 468 U.S. 897, 947-48 (1984)**; and **Katz v. United States, 389 U.S. 347, 356-57 (1967)**.

It must be remembered that "*...searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment.*" **Arizona v. Gant, 129 S. Ct. 1710, 1716 (April 21 2009) (quoting Katz 389 U.S. at 357) (Post Herring v. United States, 555 U.S. 135 (Jan. 14, 2009))**

A reasonable person may conclude, since Blake is a well-trained office of the law conducting a federal search and seizure, that he deliberately ignored binding decisions of the United States Supreme Court in conducting his unauthorized and unlawful search and seizure regardless of the fact that he knew the Search Warrant he had drafted did not authorize the search he was conducting. Since Blake drafted, personally supervised and executed and was "*...personally responsible for identifying and collecting the evidence and items to be seized within the scope of the warrant*". (Att.8) A reasonable person will ask; how Blake could have collected evidence and items within scope of the warrant without ever reading the warrant, knowing exactly what the warrant authorized to be searched for and seized? Further, "*[I]t was quite clear when this warrant was executed that limits to a search consisting only of a broad criminal statute were invalid, a fortiori, a warrant not limited in scope to any crime at all is so unconstitutionally broad that no reasonably well-trained police officer could believe otherwise.*" **George, 975 F.2d at 77.**

A reasonable person can speculate that Blake, in his zeal to assist Burke, provided evidence for the false allegations in the accusatory instruments written up hours, if not days, before a complaint or call to 911 was made. This reasonable person could assume

that Blake, having extensive training in digital technology, could have altered images and then claimed to have found them on Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol, which he had replaced with another Compaq EVO that may have contained illegal images. Fortunately, Officer Totman did not enter a false serial number for the substituted Compaq EVO.

Eleven (11) years later, evidence that Petitioner's Compaq EVO Laptop did not contain child pornography is unable to be challenged. Sufficient time has elapsed such that anyone with a smattering of knowledge can alter and/or destroy Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol and/or hard drive.

Blake, then, **sans any turnover order**, as required by **N.Y.S. C.P.L. §690.55**, removed the Compaq EVO Laptop sans a serial number from the evidence locker and turned it over to the F.B.I. on June 6, 2010 (Att. 63). See **United States v. Benitez, 779 F.2d 135, 139 (2d Cir. 1985)** (noting that section 690.55 provides the Court with *"the power to retain custody of property seized pursuant to a search warrant.")* and **Grant v. ASPCA, 2017 U.S. Dist. LEXIS 50437, 16 Civ. 2765 (ER) (S.D.N.Y. March 31, 2017**) (*"New York Criminal Procedure Law §690.55 governs the disposition of property seized pursuant to a search warrant, and establishes that the Judge issuing the warrant retains control over the property. See* **N.Y. Crim. Proc. §690.55**; **Moss v. Spitzer, 19 A.D. 3d 599, 798 N.Y.S. 2d 482, 483 (2d Dep't 2005)")**. An inquiry to the Oswego County Court revealed; *"There is no 'TURNOVER ORDER' in the Court file."*(Att. 64) This cannot be plainer, Blake never acquired the proper authorization to turn over any of the seized evidence to a court of another jurisdiction. A reasonable person may ask the Court to ruminate upon the seriousness of the facts presented. It appears to be an amateurish attempt to fabricate evidence to obtain a career boosting conviction and cover up a sloppy and illegal search using a constitutionally flawed Search Warrant and six pages of post-dated accusatory instruments of questionable origins. Blake, being an officer of the law with the New York, Oswego County Sheriff's Office, clearly was familiar and knowledgeable about the requirements of **§690.55** before being able to turn over these items to a court of another jurisdiction sans a proper Turnover Order.

It is reasonable to speculate that, with Blake's admitted training and experience, he would have the knowledge and wherewithal to fabricate evidence. <u>After all, he was willing to plagiarize an affidavit from a book,</u> claiming it was his own experience and knowledge, copying verbatim twenty-five (25) paragraphs from a book by Seth L. Goldstein, "The Sexual Exploitation of Children" (<u>Att. 83 - 86),</u> then continue to misrepresent to the Court during a hearing, claiming that he learned these 25 paragraphs from training not listed in his affidavit;

**Q.** <u>So, then, where did you come up with this list of items and statements one thru 24?</u>

**A.** <u>Based off the training and experience, I did reference in this application, that is</u>
<u>correct" (Att. 67)</u>

In order to understand Blake's actions, in his zeal to gain career credits for a child pornography conviction, an inquiry was sent to the Office of the F.B.I. and U.S. Attorney's Office requesting copies of their Chain of Custody Records for all items given them by Blake or any Officer of the Oswego County Sheriff's Office (<u>Att. 77, 78).</u> However, as of the filing of this Motion, **both agencies have not provided the documentation and have been unresponsive to request**.

Chain of custody documentation is not a new concept in law enforcement, where all transfers of custody of evidence are logged, when removed, who removed it, what files were examined, the disposition of the evidence, etc. A perusal of the **Crime Management System Evidence/Property Report** (Att. 49-63) shows that <u>Officer Leslie</u> <u>J. Totman did maintain and document every item in the case,</u> given, in the chain of custody documentation along with its corresponding serial number, as well as when an item left the evidence locker, who removed it, and what happened to it. (<u>Att. 61-63)</u>  With all the record keeping it is highly unlikely that Officer Totman would not have documented the serial number of the Compaq EVO Laptop Blake brought to the evidence locker on October 3, 2007, if in fact it had a serial number.

Reasonable people may pose the following serious questions;

1. What happened to Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol.

2. When was Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol replaced with another?

3. Who replaced Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol with another?

4. What happened to Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol seized on September 27, 2007 by Inv. Blake and in Blake's custody for an extended time?

5. Where did the 30 – 39 photographs of alleged child pornography presented for this case come from?

6. Why are the 30 – 39 photographs of alleged child pornography presented for this case not logged into the evidence locker?

A reasonable person may ask; why did Blake not secure ALL the evidence and items into the evidence locker maintained by Officer Totman on September 27, 2007 or as ordered by Judge Wells on October 1, 2007 (<u>Att. 26</u>) in the typed "*true and detailed inventory of all property taken by [Inv. Blake] on the warrant filed herewith*:" and written by Blake? While some items where secured on the date of the initial execution of the Search Warrant, Petitioner has demonstrated that other items were not secured until days, weeks and months later, lacking a Search Warrant with the authorization to do a forensic search of the computer files.

The record has shown that, at the time, Blake had decades of training and experience troubleshooting software problems for major companies, such as Microsoft. A position one would not have received if one did not know how to program software and edit computer data, lending credence that Blake may have fabricated the claimed child pornography evidence in this case, then placed that evidence on another, similar Compaq EVO Laptop and reported that he found the evidence on Petitioner's Compaq EVO Laptop.  Inv. Blake admits as much in his Affidavit for the Search Warrant, "*that persons*", such as himself, "*who are knowledgeable in the utilization of computer and*

23

*associated electronic media are able to purposefully alter, hide or destroy a variety of electronic evidence in a rapid manner*" (Att. 12). Blake knew the adage, a picture is worth a thousand words and that photos do not lie. Blake knew that fabricated electronic evidence of child pornography would inflame the Court and anyone who viewed them. As **Emily Nelson** writes "**Claims of Photofakery Gets lots of Exposure in Court, Wall St. J., Feb 7, 1997, at B2),** So great is the risk of a photo misrepresenting the truth that an International leader in digital imaging was compelled to declare "*photographs, as evidence of reality are dead.*" **George L. Paul, The "Authenticity Crisis" in Real Evidence, PRAC. LITIGATOR, NOV. 2006, at 49)** . (**Stewart Wavell, Exposed: The Cameras' White Lies, Sunday Times (London), June 22 1999, at 14 ("One Broadsheet picture editor admitted that up to 90% of photographs are now digitally enhanced or manipulated.))**

Digital manipulation is difficult to detect, plain and simple. **(Catherine Guthrie & Brittan Mitchell, The Swinton Six: The Impact of State v. Swinton on the authentication of digital images, 36 Stenton L. Rev. 661, 673 (2007))** Unlike the artifacts left behind with an analog cut-n-paste job, digital manipulations do not leave any trace of a change. **George Paul, Fabrication of Evidence: A Click Away. Nat. L. J., Feb 21, 2000, at B12)** In fact it is possible and not difficult to create a digital image with an empty pedigree – leaving no trace as to its origin. (**Victor E. Bianchini & Harvey Bass, A Paradigm for the Authentication of Photographic Evidence in the Digital Age, 20 T. Jefferson L. Rev. 303, 311 (1998)**) It is widely recognized and widely ignored, that digital images are easy to create, easy to manipulate, and difficult to authenticate. Without implementing effective protection against digitally manipulated photographs, the fidelity of the justice system will be continually and critically compromised. (**Zachariah B. Parry, Digital Manipulation and Photographic Evidence: Defrauding the Courts One Thousand Words at a Time, Journal of Law, Technology & Policy, 175 at 202, Vol. 2009)**

A reasonable person could be highly suspect of the actions taken by Dep. Burke and Inv. Blake throughout the entire case. Taken individually, each action may be considered

a minor harmless error, but viewed as a totality; it would be obvious to reasonable people that the entire case was fabricated from day one. It is apparent the officers were seeking personal, career boosting notoriety for convicting an indigent, Hispanic, alleged child sexual abuser and pornography producer, even if it meant putting an innocent person in prison for the rest of his life.

Contrary to the assertions of the prosecution, Petitioner never produced child pornography. This is evident by the Governments's own documents. In attachment 21, Blake asserts that "all archived items will be held at the Oswego County Sheriff's Office Evidence holding pending further actions or request." However it is blatantly evident from the hand-written inventory of items seized (Att. 22 -24), the later typed "true and detailed inventory of all property taken" (Att. 25 - 26), along with the Crimes Management System Evidence/Property Report (Att. 49 - 63), that at no time was Child Pornography produced and/or possessed by Petitioner. It was not seized, logged , or stored into the evidence locker. To further underscore petitioners' assertion of innocense, there was no physical or biological evidence of Petitioner sexually abusing children. Within hours of the alleged complaints, the children of the complainants were taken to a hospital for sex offense evidence collection. The results of said tests were all "*NEGATIVE*" (Att. 27 -28), the kits were destroyed on 11/05/07 (Att. 49 - 50). To bolster the assertion, a thorough medical examination was also conducted on the children by trained medical specialists in child sexual abuse. The results were stated as, "*Physical exam neither confirms nor denies a history of sexual abuse.*" (Att. 31, 38), and "**ALL NEGATIVE**" (Att. 44).

To reiterate, Petitioner's conviction is totally devoid of evidentiary support. Had Petitioner been provided all Brady and Giglio materials, particularly the Crimes Management System Evidence/Property Report (Att. 49 - 63) (a.k.a. Chain of Custody Documentation) combined with the medical reports, Petitioner would never have accepted a plea agreement in lieu of facing an unsympathetic jury presented with fabricated evidence.

## VI. <u>PETITIONER WAS DENIED DUE PROCESS BY THE PROSECUTIONS BAD FAITH FAILURE TO DISCLOSE EVIDENCE FAVORABLE TO HIS DEFENSE</u>.

Due Process requires the prosecution, upon request, disclose evidence that is favorable to the accused and is material to the case at hand. Evidence qualifies as material when there is a reasonable likelihood it could affect the judgment of the jury. **<u>Wearry v. Cain, 136 S. Ct. 1002, 1006 (2016).</u>** *"The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution"*) (**<u>Quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)</u>**. To prevail Petitioner *"...must show only that the new evidence is sufficient to undermine confidence in the verdict." "Given this legal standard, [Petitioner] can prevail even if...the undisclosed information may not have affected [a] jury's verdict."* **<u>Wearry, 136 S. Ct. at 1006, n.6.</u>**

It was only after a thorough search of records, records that had been withheld by the prosecution and the police, only recently mailed to the Petitioner anonymously in a plain vanilla envelope with only Petitioner's name, registration number, and unit written upon the undated envelope. (<u>Att. 87</u>)

Documentation proving that Blake did, in fact, replace Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol with another that may have contained evidence of child pornography along with who knows what. This, along with the fact that Blake did not secure the items seized on September 27, 2007 in the evidence locker, not even after being ordered to by Judge Wells on October 1, 2007. Blake kept these items in his possession as he continued his illegal forensic examination of the evidence sans benefit of a Search Warrant. A reasonable person may ask; why is there no child pornography listed as ever being seized on either the hand-written inventory (<u>Att. 22-24</u>) or the later typed inventory? (<u>Att. 25-26</u>)

Evidence that Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol had been replace with another and tampering with the evidence would have been highly favorable to the defense. The switching of one computer for another has irrevocably prejudiced petitioner, clearly showing bad faith by the police and prosecution. Had this evidence been disclosed it would have been highly unlikely that the prosecution could have *"...convince[d] the court that it [wa]s improbable that the original item had [not] been exchanged with another or otherwise tampered with"* **United States v. Grant, 967 F.2d 81, 83 (2d Cir. 1992), United States v. Howard-Arias, 679 F.2d 3363, 366 (4th Cir. 1982); and United States v. Brewer, 630 F.2d 795, 802 (10th Cir. 1980)**

Failure of the prosecution, in a criminal case, to disclose exculpatory evidence to the defense violates due process under the Federal Constitution when there is a reasonable probability that had the evidence been disclosed, the results of the proceeding would have been different. **Boyde v. California, 494 U.S. 370, 380 n.4 (1990).** Particularly when evidence exculpatory to a defendant is lost or destroyed. **California v. Trombetta, 467 U.S. 479, 486-89 (1984)** (*"Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed."*). **Brady v. Maryland, 373 U.S. 83, 87 (1963)**, held that suppression of material evidence justifies a new trial *'irrespective of the good faith or bad faith of the prosecution'.*" **Giglio v. United States, 405 U.S. 150, 154 (1972).**

The U.S. Supreme Court, in **United States v. Bagley, 473 U.S. 667 (1985)**, held that regardless of request, even though the government was ordered to produce all Brady and Giglio material in this case early on, favorable evidence is material, and constitutional error results from its suppression by the government, "*[I]f there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.*" Id. at 682. While Petitioner was coerced by Counsel, working for the prosecution, to plead guilty, the "*Government's obligation to disclose Brady material is pertinent to the accused decision to plead guilty, the defendant is entitled to make that decision with full awareness of favorable (exculpatory and*

27

*impeachment) evidence known to the government.* "**United States v. Persico, 164 F.3d 796, 804 (2d Cir. 1999)** This *"...test of materiality in the context of the plea is whether there is a reasonable probability that but for the failure to produce such information the defendant would have insisted on going to trial. The inquiry is an objective one that is resolved largely on the persuasiveness of the withheld evidence."* **Tate v. Wood, 963 F.2d 20, 24 (2d Cir. 1992),** See also **Miller v Angliker, 848 F.2d 1312, 1322 (2d Cir. 1981)**. Even *"...the validity of [a] plea must be reassessed if it resulted from 'impermissible conduct by state agents.'* **Brady v. United States, 397 U.S. 742, 757 (1970)**. Impermissible conduct includes **Brady** violations. See, e.g., **Miller v. Angliker, 848 F.2d at 1320-23 (2d Cir. 1981).** Thus, we have noted that where prosecutors have withheld favorable material evidence, 'even a guilty plea that was knowingly and intelligent may be vulnerable to challenge.**' 848 F.2d at 1320,"** **United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998)**

Had Petitioner known that the police and/or prosecution had substituted Petitioner's Compaq EVO Laptop with another, and that it was the content of that computer that Petitioner was being charged with, Petitioner would never have had pleaded guilty and would have insisted on going to trial. When one combines the fact that the claimed CD's and floppy disks, with alleged illegal images, were never listed as being seized from Petitioner's residence, that, the hard drive and USB flash drive were never secured in the evidence locker until December 31, 2007 (Att. 58-59), 13-days after Blake had finished his warrantless forensic examination and 91-days after being ordered to by Judge Wells, as such remained unsecured and prone to being tampered with at any time. The guilty plea was neither intelligent nor voluntary – based solely on assurance by defendants Counsel that all would be corrected in the Court of Appeals by unbiased Finders of Fact.

## CONCLUSION

Deputy Burke, of the N.Y.S. Oswego County Sheriff's Office, drafted six (6) accusatory instruments (Att. 1-6) hours, if not days or weeks, before the call to 911 was

made. Dep. Burke then post-dated the same six (6) accusatory instruments for September 27, 2007, a date in the future, then someone faxes the documents from the Volney Justice Court on September 26, 2007 at 17:58 (5:58 P.M.), sans realizing that the exact date and time of the faxed documents were printed thereon, proving they were written before the 911 call or the interview of the complainants.

Dep. Burke then has Inv. Blake contacted at his home to have Blake draw up an all-encompassing Search Warrant for any items *"which would tend to identify criminal conduct"* (Att. 9) After conducting an all-encompassing fine seine fishing expedition at Petitioner's home, seizing a plethora of items that could not, even tangentially, be connected to the probable cause of the Search Warrant under color of law. Further, Seizing Petitioner's Compaq EVO Laptop Serial #p106x420bc12xol on September 27, 2007 at 5:05 A.M. he logged another Compaq EVO Laptop sans a serial number into the evidence locker on October 3, 2007 (Att. 55). However, as shown by the record (Att. 49-63), of the Oswego County Sheriff's Office, documents withheld until September 2017, Officer Totman correctly entered into his evidence locker that the Compaq EVO Laptop presented did not have a serial number.

Facts presented herein, if taken individually, could be considered harmless or typographical errors. However, in its totality paint an amateurish picture of intentional and total disregard of Petitioner's Constitutional rights and guarantees. The facts provided herein present a total lack of evidentiary support for the conviction, begging for relief under law.

## RELIEF REQUESTED

Petitioner prays that this honorable Court vacate this unconstitutional conviction and sentence, allowing Petitioner to withdraw his guilty plea, coerced by assigned counsel. In the alternative, order a hearing to allow the documented facts presented to be brought to light. The allegations of misconduct and stench of corruption by the Police, assigned counsel, the prosecution and the N.D.N.Y. Federal Court is not unfounded, all

are supported by Government documents, Court testimony by the Police involved and sworn statements by independent, unrelated, witnesses, with nothing to gain.

## DECLARATION:

All facts documented herein are true and correct, made under the penalty of perjury.

Respectfully Submitted

In the stead of EFRAIN J. ROSA #14606-052

by scrivener EFRAIN ROSA, 7869 HAWTHORNE DR., LIVERPOOL, NY 13090

_____                On August __, 2018

EFRAIN J. ROSA, REG. #14606-052  Pro Se

UNITED STATES PENITENTIARY TUCSON

P.O. BOX 24550

TUCSON, ARIZONA  85734

This has been placed in the mail on August ____, 2018, as Priority First Class mail.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
### OFFICE OF THE CLERK



**BRIAN D. KARTH**
District Court Executive / Clerk of Court
Sandra Day O'Connor U.S. Courthouse
Suite 130
401 West Washington Street, SPC 1
Phoenix, Arizona 85003-2118

**MICHAEL S. O'BRIEN**
Chief Deputy Clerk
Evo A. DeConcini U.S. Courthouse
405 W. Congress, Suite 1500
Tucson, Arizona 85701-5010

**DEBRA D. LUCAS**
Chief Deputy Clerk
Sandra Day O'Connor U.S. Courthouse
Suite 130
401 West Washington Street, SPC 1
Phoenix, Arizona 85003-2118

August 14, 2018

Efrain J Rosa  # 14606-052
TUCSON-AZ-TUCSON-USP
U.S. PENITENTIARY
P.O. BOX 24550
TUCSON, AZ  85734

RE:  Correspondence/2241/IFP

Dear Mr. Rosa,

The U.S District Court of Arizona received your motions on August 13, 2018, requesting extension of time to "file a successive 2241 motion with this Court".  However, the Court requires clarification in order to comply with your request.

If your intent is to file a motion within an existing case, please resubmit your motions with the case number.  If you wish to file a new 2241 case; please complete and send the attached 2241 form, along with the Application to Proceed in Forma Pauperis or $5.00 payment for filing fee.

Since we are unable to file your motions, because of the above mentioned reasons, all correspondence received is being returned to you.

Sincerely,

MCO
Deputy Clerk

Enclosures

Efrain J. Rosa  14606-052
Name and Prisoner Number/Alien Registration Number

U.S.P. Tucson
Place of Confinement

P.O. Box 24550
Mailing Address

Tucson, AZ 85734
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

```
┌─────────────────────────────────────────┐
│  ✓  FILED _____     LODGED _____    │
│     RECEIVED _____   COPY              │
│                                          │
│ 7         AUG 29 2018              7      │
│                                          │
│        CLERK U S DISTRICT COURT          │
│           DISTRICT OF ARIZONA            │
│ BY _____ DEPUTY       │
└─────────────────────────────────────────┘
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Efrain J. Rosa
(Full Name of Petitioner)

**CV 18-0438 TUCCKJDTF**

Petitioner,

) CASE NO. _____
) (To be supplied by the Clerk)

vs.

Juan Baltazar
(Name of Warden, Jailor or authorized person having custody of Petitioner)

**PETITION UNDER 28 U.S.C. § 2241**
**FOR A WRIT OF HABEAS CORPUS**
**BY A PERSON IN FEDERAL CUSTODY**

Respondent.

## PETITION

1. What are you challenging in this petition?
   - ☐ Immigration detention
   - ☐ Bureau of Prisons sentence calculation or loss of good-time credits
   - ☐ Probation, parole or supervised release
   - ☒ Other (explain): Petitioner is not guilty of the crimes convicted of, and Petitioner's conviction is devoid of evidentiary support

2. (a) Name and location of the agency or court that made the decision you are challenging: _____
   Northern Dist. Ct. of N.Y.

   (b) Case or opinion number: Dist. Ct.

   (c) Decision made by the agency or court: 120-year sentence

**530**

(d) Date of the decision: *February 12, 2009*

3.   Did you appeal the decision to a higher agency or court?   Yes ☒   No ☐

If yes, answer the following:

(a) First appeal:

(1) Name of the agency or court: *Second Circuit Court of Appeals*

(2) Date you filed: _____

(3) Opinion or case number: *United States v Rosa, 626 F.3d 56 (2d Cir. 2011)*

(4) Result: *Affirmed*

(5) Date of result: _____

(6) Issues raised: *The search warrant was facially invalid and can not be relied on in good faith*

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision.**

(b) Second appeal:

(1) Name of the agency or court: *U.S. Supreme Court*

(2) Date you filed: _____

(3) Opinion or case number: *Rosa, 132 S. Ct. 1632*

(4) Result: *Cert. denied*

(5) Date of result: *February 27, 2012*

(6) Issues raised: *Should any items seized be suppressed*

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision.**

(c) Third appeal:

(1) Name of the agency or court: *Northern Dist. of New York*

(2) Date you filed: _____

(3) Opinion or case number: _Rosa, 5:07 cr 00443_

(4) Result: _§2255 denied as untimely_

(5) Date of result: _____

(6) Issues raised: _See Dist. of Arizona, No. 16-00003-TUC-CKJ_
_____
_____
_____

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision.**

4.   If you did not appeal the decision to a higher agency or court, explain why you did not: _____
_____
_____
_____
_____

5.   Other than the appeals listed above, have you filed any other petitions, applications or motions concerning the issues raised in this petition?      Yes ☒      No ☐

If yes, answer the following:

(a) Name of the agency or court: _U.S. Dist. Ct. for the Dist. of Arizona_

(b) Date you filed: _February 18, 2016_

(c) Opinion or case number: _CV 16-00003-TUC-CKJ (JR)_

(d) Result: _Petitioner failed to demonstrate that §2255 was inadequate_

(e) Date of result: _May 25, 2016_

(f) Issues raised: _____
_____
_____
_____

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision.**

6.   For this petition, **state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States**.  Attach additional pages if you have more than four grounds.  State the <u>facts</u> supporting each ground.

**CAUTION:** <u>To proceed in the federal court, you must ordinarily first exhaust (use up) your available administrative remedies on each ground on which you request action by the federal court.</u>

3

**GROUND ONE:** *Petitioner is Factually, and Actually, Not Guilty of the Crimes Alleged and Convicted of*

(a) Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.): *The allegations were written five hours or more before a call to 911 was made, making the allegations. This is based on a fax date/time stamp at the top of the Accusatory Instruments of 09/26/2007 17:58. The statements by the complainant's was not initiated until 23:30.*

(b) Did you exhaust all available administrative remedies relating to Ground One?        Yes ☒        No ☐

(c) If yes, did you present the issue to:
    ☐ The Board of Immigration Appeals
    ☐ The Office of General Counsel
    ☐ The Parole Commission
    ☒ Other: *Northern District of New York*

(d) If you did not exhaust all available administrative remedies relating to Ground One, explain why:

**GROUND TWO:** _Petitioner was subjected to an unconstitutional and unreasonable search and seizure sans extenuating circumstances_

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim.):

_The search warrant contained no judicial limitations other than items "which would tend to identify criminal conduct". It did not authorize a search for child pornography or any evidence of child sexual abuse. Items were siezed that were unrelated to any allegation. The officer obtained the "anytime" authorization soley "because it was 4:00 in the morning and we were going to execute the warrant fairly soon which would have been prior to 6:00 that morning."_

(b) Did you exhaust all available administrative remedies relating to Ground Two?     Yes ☒     No ☐

(c) If yes, did you present the issue to:
  ☐ The Board of Immigration Appeals
  ☐ The Office of General Counsel
  ☐ The Parole Commission
  ☒ Other: _N.D.N.Y. , Second Circuit Court of Appeals_

(d) If you did not exhaust all available administrative remedies relating to Ground Two, explain why:

**GROUND THREE**: _Petitioner's court assigned counsel operated under an actual, self-inflicted, conflict of interest_

(a)  Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.):

_Petitioner's Court assigned counsel disclosed details of Petitioner's case to another client of hers and solicited said client to acquire a confession from Petitioner in a quid-pro-quo deal for a lesser sentence._

(b)  Did you exhaust all available administrative remedies relating to Ground Three?      Yes ☒    No ☐

(c)  If yes, did you present the issue to:
   ☐ The Board of Immigration Appeals
   ☐ The Office of General Counsel
   ☐ The Parole Commission
   ☒ Other: _N. D. N. Y._

(d)  If you did not exhaust all available administrative remedies relating to Ground Three, explain why:

**GROUND FOUR:** _Petitioner was denied an unbias and impartial finder of fact._

(a)  Supporting FACTS (Do not argue or cite law.  Just state the specific facts that support your claim.):

_The A.U.S.A. was overheard boasting to an investigator that she has the Federal Judge in her pocket._

(b)  Did you exhaust all available administrative remedies relating to Ground Four?   Yes ☒   No ☐

(c)  If yes, did you present the issue to:
  ☐  The Board of Immigration Appeals
  ☐  The Office of General Counsel
  ☐  The Parole Commission
  ☒  Other: _N. D. N. Y._

(d)  If you did not exhaust all available administrative remedies relating to Ground Four, explain why:

7

**Please answer these additional questions about this petition:**

7.    Are you challenging your conviction or sentence in any of the grounds raised above?  Yes ☒       No ☐
(Claims challenging a federal conviction or sentence may only be raised in a motion under 28 U.S.C. § 2255, unless the § 2255 motion is legally inadequate or ineffective.)

   If yes, answer the following:

   (a)   Have you filed a motion under 28 U.S.C. § 2255?              Yes ☒        No ☐

         If yes, answer the following:

         (1)  Name of court: _Second Circuit Court of Appeals_____

         (2)  Case number: _____

         (3)  Opinion or case number: _____

         (4)  Result: _____

         (5)  Date of result: _____

         (6)  Issues raised: _____
         _____
         _____
         _____

         **Attach, if available, a copy of any brief filed on your behalf and a copy of the decision.**

   (b)   Explain why the remedy under § 2255 is inadequate or ineffective: _Petitioner is making a claim of actual innocence, the legal basis did not arise until after he had exhausted his first §2255 and direct appeal._

8.    If this case concerns immigration removal proceedings, answer the following:

   (a)   Date you were taken into immigration custody: _____

   (b)   Date of removal or reinstatement order: _____

   (c)   Did you file an appeal with the Board of Immigration Appeals?      Yes ☐      No  ☐

         (1)  Date you filed: _____

         (2)  Case number: _____

(3)  Result: _____

(4)  Date of result: _____

(5)  Issues raised: _____
_____
_____
_____

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision.**

(d)  Did you file an appeal with the federal court of appeals?        Yes ☐        No ☐

(1)  Name of the court: _____

(2)  Date you filed: _____

(3)  Case number: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____
_____
_____
_____

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision.**

9.    Petitioner asks that the Court grant the following relief: _To vacate the conviction and_
_sentence releasing Petitioner and/or order a hearing to allow_
_the facts to be raised and proven then vacate the conviction_
_and sentence._

or any other relief to which Petitioner may be entitled.  (Money damages are not available in habeas corpus cases.)

I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _August 21, 2018_ (month, day, year).

_____
**Signature of Petitioner**

_____        _____
Signature of attorney, if any                              Date

9

**EFRAIN J. ROSA #14606-052**                                    **TUCSON COURT**

## Ground Five:  <u>Petitioners' Conviction is Devoid of any Evidentiary Support</u>.

(a)      <u>Supporting Facts</u>

On September 27th, 2007 Inv. Blake seized a COMPAQ EVO COMPUTER,
Serial #p106x420bc12xoL, and numerous unlisted computer media. In a forensic report Inv.
Blake claimed to have discovered "39 photographs that would be considered Child Pornography"
of the complainants. However, in neither the "...true and detailed inventory" or any inventory,
including the evidence locker report, is there any child pornography. Further, six days after
seizing the COMPAQ EVO COMPUTER, Serial #p106x420bc12xoL, it was replaced with an
identical unit lacking a serial number.

(b)      **Not all remedies have been exhausted**

(d)      **Explain WHY**:

This issue is presently being presented in the Second Circuit for a successive §2255 as newly
discovered evidence. Due to time constraints this is being presented new to this Court to
preserve this claim.

## Ground Six: The Prosecution, and/or Police, Suppressed Evidence Favorable to
##        Defendant.

(a)      <u>Supporting Facts</u>

The Prosecution, and/or Police, withheld documentation showing that within the first six (6) days
Petitioner' computer, that was alleged to contain Child Pornography, had been replaced with
another and the same documentation showing there never was Child Pornography for a
conviction.

(b)      **Not all remedies have been exhausted**

(d)      **Explain WHY**:

This issue is presently being presented in the Second Circuit for a successive §2255 as newly
discovered evidence. Due to time constraints this is being presented new to this Court to
preserve this claim